JOHN HARSE, APPELLEE, v. OLIVER RAMER ET AL., APPELLANTS.

FILED JUNE 26, 1911. No. 16,455.

Ejectment: APPEAL: CONFLICTING EVIDENCE. Where in an ejectment case the evidence is sharply conflicting as to the true location of an original government corner and as to the question of adverse possession, and there is sufficient evidence on each point to sustain the verdict, this court will not interfere with the findings of the jury.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*W. L. Hand* and *Fred A. Nye, for* appellants.

*N. P. McDonald* and *John N. Dryden, contra.*

LETTON, J.

This is an action of ejectment to recover a strip of land about 10 rods wide at the east end and 12 rods wide at the west end, extending across section 8, township 12, range 18, in Buffalo county. Plaintiff claims that the strip is part of the north half of the section, which is his property, while defendants insist that it is part of the south half of the section, the title to which is in them. Defendants also assert title by adverse possession for more than 10 years. The reply was a general denial. The jury found for the defendants as to all the strip except that lying north of the east one-half of the southeast quarter of the section. As to this portion it found for the plaintiff. Since the true boundary line of the entire strip, according to government survey, was the same, the west three-fourths of the strip must have been awarded to the defendants on account of adverse possession for the statutory period, while the title to the east one-fourth of the strip must have been awarded to the plaintiff on account of the true line being as he contends. The dispute is as to the true location of the quarter corner between the northeast and the southeast corners of section 8. The government corner being missing, the lost corner was established at different points by different surveyors. The location of the northeast corner of the section is also in dispute, and, since the true location of the quarter corner depends upon the location of this corner, much testimony was taken as to this. The testimony with respect to the location of this corner at the intersection of sections 4, 5, 8 and 9 is conflicting. The plaintiff's case virtually rests upon the proposition that a corner stone at this point, which is denominated by him the "lagoon" corner, is the true government corner. The evidence on his behalf is that the quarter corner south of this was lost, and that it was afterwards established by dividing equally the distance between the northeast and southeast corners of section 8.

A great deal of testimony is in the record both by sur-

veyors and private individuals with respect to the true lo-
cation of both of these corners. Some individuals testify
that at the time of the early settlement of the county they
actually saw the government monuments in place. Others
testify that no monument ever existed between the north-
east and southeast corners of section 8. Several surveyors
agree with the plaintiff's contention as to the "lagoon"
corner being the correct one. Others take a different view.
One point of the testimony seems beyond dispute, and
that is that Surveyor Webster made two surveys. Harse
testifies that Webster established the quarter corner and
placed a sandstone in an old road, and that on another
survey he moved this stone 8½ rods north and 4½ rods east
of where it was originally placed. He claims that the first
location was correct, while Ramer asserts that the second
is the true one. We think it unnecessary to attempt a
detailed statement of the evidence. In fact, it would be
impossible to do so without extending this opinion to an
unwarranted length. The evidence is in such sharp con-
flict on material points that we must be satisfied with the
verdict of the jury as to which of the lines is the correct
one according to the original survey. Considering all the
evidence in connection with the verdict, it seems clear that
the jury found the true line to be where the plaintiff
claims it is. It is evident that the Ramers and their
father before them had actual possession claiming title to
that portion of the strip awarded to them by the jury;
part of it since 1885, and part of it since 1894, at which
times, respectively, the father became the owner of the
adjoining tracts. This possession they maintained up to
the time of the trial.

The east quarter mile of the disputed strip, which was
found to belong to the plaintiff, is in a different situation
with respect to possession. On a portion of this strip
Harse in 1883 planted 10 acres of trees. He could not
find the quarter corner and was not able to determine
just where his line was, but by standing upon a hill and
looking eastward he observed trees set out and improve-

ments made by other settlers north and south of the line of a road which had previously been laid out in the center of the sections east, and he set out his trees by estimating as nearly as he could where his line would be with reference to the road. He had assisted in running this line, and testifies the surveyor had found original government corners in a straight line running west through several sections to a point a mile east of his land. He cultivated the trees as long as he was able to do so, and built a fence to the north of them, to protect them from his cattle, as he says. In 1892 one Keens was the owner of the east $\frac{1}{2}$ of S. E. $\frac{1}{4}$ of sec. 8, which adjoins this on the south. Keens did not live upon the land. In October, 1903, Ramer purchased this 80 acres from Keens, and shortly afterward ran a fence with one wire through the trees which Harse planted, at the place Ramer claimed the true line should be. Some time afterward Harse put a fence on the south side of the trees and south of the wire put up by Ramer. This fence was in turn torn down by the Ramers, but a temporary fence was again put up by Harse's son in an irregular manner along the trees. If the jury were satisfied that plaintiff's contention as to the true line was correct, then the defendants could only be entitled to this, as well as to other portions of the disputed strip, by virtue of adverse possession. We are satisfied that the evidence as to the possession of Keens was not of such a character as to warrant the jury in finding that the defense of adverse possession for 10 years before the action was begun had been established. Ramer leased the 80 acres from Keens, but it is not shown that Keens ever made any attempt to occupy this strip adversely to Harse, or that he pretended to claim adverse possession of the trees or the land on which they stood. The fact that during a part of the time that Keens owned this 80-acre tract the Ramers, while tenants of his, cultivated part of the disputed strip is not sufficient to show that Keens' possession was hostile and adverse. It may have been permissive for all that the

evidence shows, and indeed the plaintiff's evidence would so indicate.

The defendants argue that the court should "consider the great public wrong that will flow from the location of the east and west section lines north of sections 8, 9, 10 and 11 to conform to the *lagoon* corner," and insist that it will affect all owners of property along this line. The manner in which the verdict of the jury may indirectly affect others not before this court cannot be considered. It is possible that, if controversies arise as to the true location of other monuments along the section lines, the evidence may be different. Each case must rest upon the facts which are before the jury in that particular case. This court has no power to determine, as the defendants' counsel requests, "that the *lagoon* corner is not the true corner, but that the true corner is 16 to 18 rods north" of the same.

The defendants complain that the tract awarded to the plaintiff by the jury is larger than that described in the petition. The petition claimed a strip about 10 rods and 8 feet wide at the east end, the north line being marked by a fence, and about 12 rods wide at the west end, though he claimed a smaller tract by adverse possession. The jury awarded a strip 179 feet wide between the true half-section line and the Ramer fence, and this is within the claim made in the petition. The fact that the plaintiff only recovered a part of the tract described 'in the petition is not material, and does not prejudice the defendants in any way.

Defendants complain that the costs were taxed against them by the district court. The plaintiff claimed about 24 acres of land. He recovered a judgment for about 5½ acres, and the defendants succeeded as to the remainder. Practically both parties succeeded in the action. In such a case it is proper for the district court to divide the costs. *Hale v. Young,* 24 Neb. 464; *McGillin v. Gleason,* 34 Neb. 694; 34 Cyc. 1557.

The judgment of the district court should be affirmed

in all respects, save with respect to the taxation of costs. These should be divided, each party paying his own costs in both courts.*

AFFIRMED.

---

* September 25, 1911, order entered taxing costs to appellants.